**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12 cr 707-3 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| WILLIE WOODS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant, Willie Woods, moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) and (c), arguing that the government failed to prove beyond a reasonable doubt that Woods engaged in or conspired to engage in sex trafficking of minors or obstruction of justice [229, 230]. Woods also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33, reciting a litany of purported judicial errors [228]. For the reasons stated herein, the motions are denied.

**Background**

On November 6, 2015, a jury convicted Willie Woods of one count of conspiracy to sex traffic a minor by force, fraud, or coercion, three counts of sex-trafficking a minor by force, fraud, or coercion, one count of transporting a minor in interstate commerce to engage in prostitution, and one count of obstruction of justice.

**Legal Standard**

A criminal defendant who has been found guilty by a jury may move for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) (at the close of the government's case), and 29(c), at the close of all the evidence. Woods challenges the sufficiency of the evidence presented at trial, therefore the Court must "consider the evidence in the light most favorable to the prosecution,

drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the essential elements of the crime.'" *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006)(quoting *United States v. Masten,* 170 F.3d 790, 794 (7th Cir. 1999)).

"[I]f the interest of justice so requires," the court may provide a new trial to a criminal defendant found guilty by a jury. Fed. R. Crim. P. 33(a). It is within the sound discretion of the trial judge to decide whether to grant a new trial. *United States v. Gillaum*, 372 F.3d 848, 857-58 (7th Cir. 2004). "[A] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). In determining whether to grant a new trial, a court should exercise "great caution" and be "wary of second guessing the determinations of the . . . jury." *United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000) (quoting *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993)).

**Discussion**

*1. Sufficiency of the Evidence*

Woods renews his motion for judgment of acquittal, raised at the close of the government's case in chief, and argues that there is insufficient evidence to sustain a conviction beyond a reasonable doubt. He specifically argues that the testimony of the government's three main witnesses, Minor A (Kayle D.), Minor B (Jade H.), and Minor D. (Santonika F.), was inconsistent and contradictory.

To establish a violation of 18 U.S.C. § 1591(a), the government must prove that Woods recruited, enticed, harbored, transported, provided, obtained, or maintained a minor, knowing or recklessly disregarding the fact that Kayle, Jade, or Santonika was a minor under the age of 18 and would be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1951(a). The offense must also affect interstate commerce. *See* 18 U.S.C. § 1591(a); *United States v. Myers*, 430 F. App'x 812, 815-16

(11th Cir. 2011). The government also had to prove these elements as a conspiracy and that Woods attempted to obstruct justice in violation of 18 U.S.C. §§ 1512(b)(1), (2).

Woods provides the following examples as inconsistent testimony in support of his motion for judgment of acquittal: (1) Kayle's grand jury testimony that she had not met Woods before April 7, 2012, and her trial testimony that she met him in February 2013 in Cedar Rapids, Iowa; (2) Kayle's testimony in one instance that Woods rode with her from Iowa City, Iowa, to Chicago, Illinois, and in another instance she told investigators that Woods' girlfriend was with them on the trip; (3) that Jade gave differing accounts of what occurred in the house in Iowa City, Iowa, on April 7th, 8th, and 9th, and gave contradictory statements regarding her age and Kayle's age. Woods also asserts that Santonika's testimony was not worthy of belief because of her personal relationship with Woods' co-defendant Shuntina McKee. While none of these instances of inconsistency are particularly damaging or even really inconsistent, it is not proper for this Court to re-weigh the credibility of the testimony in a post-trial motion. *See United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

There was overwhelming evidence to support the verdict in this case. The testimony of Kayle, Jade, and Santonika, proved that Woods and his co-defendants recruited them, had them perform sex acts for money through force, fraud or coercion. The evidence showed that Woods photographed Kayle, then fourteen years old and posted advertisements on Backpage.com offering her for dates in exchange for payment. In April 2012, Kayle and her sixteen year old friend Jade went from Cedar Rapids, Iowa, to Iowa City, Iowa, at Woods' co-defendant's request. Once Kayle and Jade were in Iowa City, Woods photographed Jade for advertisements on Backpage.com. Evidence showed that Woods knew Malik McKee directed Mariah Mariner to hit Jade when they caught her having sex for free. Malik and Mariah took Jade to Chicago for more lucrative dates, instead of taking her home as she requested. While Malik McKee and Mariah Mariner took Jade to

Chicago, Kayle stayed in Iowa with Woods. She testified that Woods threatened her when she refused to have sex with him.

Santonika testified that Woods drugged her and raped her the night she met him. When she awoke the next morning in bed with Woods, she did not know what had happened but had pain in her vagina. Santonika later learned that Woods had videotaped himself raping her. Woods knew Santonika was seventeen. He is co-defendant Shuntina McKee had asked her for identification and Santonika's parents directly spoke to Woods about her age and the inappropriateness of Woods' being with her. Woods was present when Santonika was arrested for prostitution and he lied to the police about knowing her or why he was there.

The testimony of the three minors represents only a portion of the evidence presented against Woods. The government also presented evidence through recorded phone calls, photographs, and the Backpage.com advertisements. All of which supported the jury's verdict in this case. Based on the foregoing, Woods' motions for judgment of acquittal [229, 230] are denied.

*2. New Trial*

Woods also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. In support of his motion, Woods raises eighteen issues. (Dkt. 228) Paragraphs 1, 2, 5, and 6, challenge the sufficiency of the evidence. Paragraphs 3 and 4 assert without explanation that Woods was denied due process and equal protection. Paragraphs 16, 17, and 18, claim the Court erred in denying Woods' motion for judgment of acquittal at the close of the government's case and at the close of all the evidence, and that a new trial is in the best interest of justice. These arguments are too conclusory and undeveloped for this Court to find a basis for a new trial. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)").

Paragraphs 7 and 8 claim the Court erred by denying Woods' motion in *limine* pursuant to Federal Rule of Evidence 403 and 702 the government's sex trafficking expert. This Court considered the parties' arguments both written and oral before denying the motion to bar the government's sex trafficking expert. Woods presents no new arguments on this issue. Therefore, this Court finds no basis to revisit its prior ruling.

Paragraph 9 asserts that Woods was prevented from testifying in a clear and orderly fashion by the Court sustaining the government's objections to Woods' narrative testimony. Woods however does not provide any analysis or reference any specific points where he was prejudiced by the Court's rulings. "A criminal defendant does not have an absolute, unrestrainable" right to testify however he chooses; it must be relevant and material. *United States v. Carter*, 410 F.3d 942, 951 (7th Cir. 2005).

Paragraph 10 asserts that the disruption from people entering and exiting the courtroom caused the jury to be unable to give careful attention to the defendant's testimony. This Court makes every effort to maintain a quiet and orderly courtroom. Parties are admonished before trial of this Court's rules regarding who may enter and exit the "well" of the courtroom and when they may do so. This Court responded to the jury's inquiry regarding the disruption immediately addressing the problem. It is a public courtroom however and the Court is limited in its ability to prevent such disruptions. This Court also finds no basis from this minor intrusion to find that justice requires a new trial.

Paragraphs 11, 12, 13, 14, and 15, raise concerns about Woods' access to certain discovery, primarily CDs and DVDs while he was in pretrial custody at the MCC, and that the Court erred by setting his trial date for October 28, 2015, because it did not allow enough time for preparation. Woods has not shown any error based on these claims. This Court gave Woods numerous opportunities for access to discovery in this case and the MCC confiscated some of the discovery

because of Woods' allegedly improper use of the material, some of which was sexually graphic. This Court provided Woods with four court-appointed attorneys to assist in his trial and pretrial preparation. The trial date was set on March 11, 2015, for October 28, 2015, and had been ongoing since September 2012. Woods offers no analysis to explain the manner in which he believes he was prejudiced.

Based on the foregoing, this Court finds no basis to grant Woods a new trial.

**Conclusion**

After considering the motions and reviewing the trial record, this Court denies Woods' post-trial motions for Judgment of Acquittal [229, 230] and for a New Trial [228].

IT IS SO ORDERED.

Date: February 5, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge